We will hear argument next in Case 2659, Thompson v. Clark. Mr. Ali? Thank you, Mr. Chief Justice, and may it please the Court. The Second Circuit holds that a criminal proceeding terminates in the accused's favor only if it affirmatively indicated that the accused is innocent. That is wrong. A criminal proceeding terminates in the accused's favor when it ends and the prosecution has failed to obtain a conviction. As this Court has recognized, Section 1983's favorable termination rule protects against parallel proceedings, inconsistent judgments, and collateral attack. That explains why the plaintiff in Heck had to go off and get his conviction overturned on direct appeal, habeas, or through a pardon, and it explains why the plaintiff in McDonough satisfied the rule upon his acquittal. It also explains why the dismissal of charges terminates the proceeding in the accused's favor. When charges have been dismissed, a civil suit is not parallel to, inconsistent with, or collaterally attacking anything. As the Eleventh Circuit observed, every circuit to adopt the indications of innocence approach has mistakenly imported it from an unsubstantiated comment in the restatement. With very able counsel, Respondent could not come up with any plausible defense of that added inquiry and focuses most of his energy on record-specific arguments from the tertiary stage that divert from the question presented. Respondent had a tall order. If he wants to inject his additional innocence inquiry into this federal statute, he had to show it was so well-settled in 1871 that Congress would have taken it for granted. Instead, Respondent openly admits that there was no such well-settled principle. This Court's opinion can end there. Even pretending that Respondent could fight to a draw, it would not be a basis for reading his additional inquiry into the statute, and Respondent is nowhere near a draw. So, as the Eleventh Circuit detailed, all jurisdictions except for Rhode Island adopted Petitioner's Rule and understood that the dismissal of charges terminates the proceeding in the accused's favor. I welcome the Court's questions, if there are any. Mr. Ali, before we get to the termination issue, favorable termination issue, don't we have to address whether or not there actually can be a malicious prosecution case or claim based upon Fourth Amendment seizure? An unreasonable seizure under the Fourth Amendment. So, this Court held in Manuel that there is a Fourth Amendment claim for unreasonable seizure pursuant to legal process, and that is the claim that is before this Court. And I want to be very clear on this. Petitioner is not asserting a standalone malicious prosecution claim. You know, Respondent before this Court, now at the merit stage, is asserting some sort of confusion in that respect because Respondent used the malicious prosecution label that is used, you know, throughout all of the circuits, as Chief Judge Pryor put it, that's the shorthand for this Manuel claim. So, you know, we think the Court has already decided that the claim exists, Your Honor. But the role that the analogy to malicious prosecution plays in this case is a particular one, and I'm happy to address that, Your Honor. But please. Yeah, so our position is that the Fourth Amendment does not have a favorable termination element. This is not an argument that we import the elements of malicious prosecution into the Fourth Amendment. But Petitioner brought his Fourth Amendment claim, his claim under Manuel, using the vehicle of Section 1983. And this Court has held that when Congress enacted Section 1983, it is reasonable, because it's a species of tort liability, to assume that Congress would have taken for granted certain well-settled common law tort principles when it enacted the statute. And so in the favorable termination rule, or the analogy to malicious prosecution in this case, takes place for all of the reasons that it took place in McDonough and in Heck. What this Court said is that when you were bringing a civil suit which challenges the initiation of a state judicial proceeding, that the relevant tort you analogize to is malicious prosecution, and in particular, that the favorable termination rule comes into play under Section 1983. What was the initiation? Where was this initiated, the state proceedings? This was initiated in New York State Court. No, I mean, so, I'm confused. Which seizure are you... At what point was Petitioner seized? And that is the basis for this claim. Sure. So, I promise to answer your question, but let me just say, the question presented here presumes a seizure pursuant to legal process. We don't think the Court needs to get into the question of what the particular seizure was. I think you're conflating two things, and I just want you to identify exactly where the seizure is and exactly where the proceeding begins. Right. So, in this case, Respondent never challenges below, but there are two seizures in the record here. First, as the United States admits in this case, the criminal complaint was filed while Mr. Thompson, while the Petitioner was still in custody, and so process, legal process was initiated, and Petitioner was, we will have to show Petitioner, you know, if Respondent is allowed to raise it at this late stage, that Petitioner's seizure, for the purposes of this particular seizure, we'll have to show that Petitioner's seizure was caused by the initiation of legal process, meaning he would have been released had that false criminal complaint not been filed. The second seizure in this case, which has also been unchallenged, since it was specifically ruled upon at the summary judgment stage and deemed proven at trial, you know, we heard nothing from Respondent on the seizure either, is that there's Second Circuit precedent clearly holding that the restrictions when being released on recognizance and the compelled attendance in court hearings constitutes a seizure within the meaning of the Fourth Amendment. You know, our position in this case, though, and I think what's critical for this Court to know, is that the Second Circuit is perfectly capable of resolving those kind of late-breaking arguments that Respondent is making before this Court on remand. Suppose the case had gone to trial, the criminal case had gone to trial, and your client was actually convicted based on evidence entirely having nothing to do with the criminal complaint. Would you have a claim? Well, if he was convicted, we wouldn't be able to satisfy the favorable termination rule. So there would be no claim. Even though he was arrested without probable cause, you claim? Suppose he's arrested without probable cause, he's held for trial without probable cause, but then at trial, the state comes up with completely different evidence and irrefutable evidence, and this individual is convicted. Is there a claim? A Fourth Amendment claim? So there is a Fourth Amendment violation in your hypothetical, but it is not cognizable under Section 1983. And this is an important point, so just to explain a little bit more, I mean, so a couple of responses. It is always the case when the Court reads a prerequisite into the statute, separate and apart from the constitutional violation, that certain constitutional violations will not be actionable. So that was true in McDonough, right? You could have had false evidence introduced to instigate the criminal proceeding. As your hypothetical just posited, it could have been evidence that was likely to have affected the jury's verdict, but the plaintiff could have been convicted. And he would not have a claim because of the favorable termination rule, all the same in McDonough. I could give the same hypothetical in the context of Hecht. So that is always true in these cases. Now, I think it's actually... Well, my question is, why should there be any kind of a termination element to this claim? It's a claim that there was an unreasonable seizure. So what does that have to do with whether... Why is that at all dependent on the outcome of the trial? So I think the Court's jurisprudence clearly distinguishes between those Fourth Amendment claims which challenge seizures without legal process, as the Court put it in Wallace and in subsequent cases like McDonough, or in subsequent cases, and seizures pursuant to legal process. And in McDonough, we think the Court confronted this question. The exact same question. And it said, when you have... You know, the gravity of the claim necessarily challenges the initiation of state criminal proceedings, then the analogous tort is malicious prosecution and the favorable termination rule. I don't want to fight too hard on this, because if there's no favorable termination rule at all, then the Second Circuit clearly erred in requiring affirmative indications of innocence. And I'd be glad to talk about the problems with that rule. If it's all right. Because that's what I'm a bit mystified by. If the Fourth Amendment doesn't require termination at all, or malice, why would you fight those things? Wouldn't it be easier for your client to say it's a false imprisonment claim, starting whether by judicial process or by arrest, as in this case, and it was unlawful from the start? You know, we'll take the win on the alternative grounds. We think the best and really only plausible reading of this case is that there's a favorable termination rule. And we think that the interests of the court identified in McDonough are actually significant, right? So you actually want to have to prove favorable termination. You're just quibbling over what that termination should look like. How favorable it has to be. You say not so favorable, they say very favorable. Right. You want to prove that. And you want to prove malice, too? Well, Your Honor, I think that the inquiry would be different for malice, right? Let me come back to your first question as well. You haven't thought that, though. I mean, malicious prosecution has always required proof of malice, and you don't seem to dispute that. And you seem to be making it awful hard to prove a Fourth Amendment claim. Well, Your Honor, I think we have to remember that we're engaged in interpretive inquiry here. And I think really... I'm very concerned about that, too. And one of the things I've noticed is this court's never recognized a malicious prosecution claim under the Fourth Amendment. And it's reserved the question a couple of times now, at least. Isn't it time that we answer that before we decide what the elements of that claim should look like? I think the court can very comfortably say all the parties agree there's no stand-alone malicious prosecution claim under the Fourth Amendment. I don't think that answers the question before the court. Oh, hold on. That was a big moment there, I think. So you agree that there is no stand-alone malicious prosecution claim under the Fourth Amendment? In which you just pull in the torts of malicious prosecution into the Fourth Amendment. We don't believe the origin of this favorable termination rule is the Fourth Amendment. It is the analytical framework that the court clearly set out in Manuel and that Chief Judge Pryor adopted, right? But you have a Fourth Amendment... Your claim is a Fourth Amendment claim, right? Yes. And you want to import into that an element from the tort of malicious prosecution, right? The Fourth Amendment has no favorable termination element. Just like the Due Process Clause has no favorable termination element or no probable cause element, right? That was McDonough. The court didn't say, we're importing the favorable termination rule into Section 1983 and that means you now have to prove an absence of probable cause under the Due Process Clause. It's the same... It doesn't have any kind of a termination element. Does termination have anything to do with it? Well, okay. So the interpretive inquiry that we're engaged in here says that this is a species of tort liability enacted by statute. So it makes sense at the initial, the first step, to assume that Congress would have assumed that certain prerequisites that existed at common law would be read into the statute. This is where we get to the malice question, which is a different question, because the second stage, which the court set forth in Manuel and which Chief Judge Pryor also applies, is that you have to look at whether that well-settled principle is consistent with the statute that Congress actually enacted, meaning the purpose and values of the Fourth Amendment. The court, I think, would come to the different conclusion in the context of reading malice into Section 1983 because the Fourth Amendment itself says reasonable, objective inquiry, and so it's pretty hard to square a malice requirement. So you don't think we should have malice and you don't think we should have a favorable termination requirement, and so why wouldn't we just have a Fourth Amendment, as in Manuel's claim? Most analogous might be a false arrest. So, Your Honor, I want to be very clear here. I don't think there should be malice or Fourth Amendment read into the Fourth Amendment. I do believe that when one brings a claim of unreasonable seizure pursuant to legal process, just like when one necessarily challenges the initiation of legal process under the Due Process Clause, that Congress would have assumed, and I think this is just McDonough, would have assumed a favorable termination rule and that that rule is consistent with Section 1983. So we do think that the best reading of this court's case law is that there's a section, that there's a favorable termination rule, and if I could come back to just... You don't want it to be just false arrest, though, because you lost the false arrest claim in this case. Your Honor, I think it's pretty hard at this point to get to false arrest as the analogy. I mean, the court said that at bottom, the reason that the Due Process Clause claim, the assumed Due Process Claim in McDonough was analogized to malicious prosecution was that it was undertaken pursuant to legal process. That was the language in McDonough. And heck said, I mean, it's pretty clear, the common law cause of action for malicious prosecution provides the closest analogy to claims of the type considered here because unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process. There's a misfit, I think you're acknowledging, between the Fourth Amendment and this kind of malicious prosecution kind of claim that the courts of appeals have generally recognized. But I think you're telling us, well, just muddle along with that and don't worry about it because that's not the question presented. Is that an accurate summary of what you're suggesting? Well, we think it's pretty clear that for the reasons stated in McDonough, the favorable termination rule exists. We do think, and I think I'd like to bring the court back to the question presented because I do think that the common law adopted a very, very clear rule here that is easy for courts to apply, right? Two functions for the favorable termination rule. First function, let's try to avoid parallel litigation of probable cause and guilt. How do they resolve that? The solution is require that the proceeding be over. Second function, let's avoid inconsistent judgment and collateral attack of judgments. How do we ensure that that function is met? Let's require that there have been no conviction at the end of the proceeding. Very straightforward rule. We don't think that's an accidental thing. As Justice Scalia pointed out in his act majority, the reason the court turns to the common law is because those rules were developed over the period. Oh, that's true. I'm now slightly confused because I usually read briefs and I thought the question presented. I didn't know about all this 1983 business. It's something they said in the Second Circuit. A plaintiff asserting a malicious prosecution claim under 1983 must show that the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence. And we're arguing about whether that's so. Is that right? Right, Your Honor. Okay, if that's right, what do you do if, as you want to say, no, it doesn't? Right. Okay. So the assistant DA is there testifying. Why do you not prosecute this guy? You dismiss him. To tell you the truth, Your Honor, we have hundreds, maybe thousands of cases. We have a very big staff. We can't handle all this. And so we, in fact, do dismiss quite a few cases, an awful lot, because we just can't handle them. And we take the more serious ones. Why do you dismiss this one? Honestly, Your Honor, I can't find anybody in the office who remembers. Okay. But I can tell you our general policy. What do you say? Your Honor, in that case, there's been no conviction, and it sounds like the proceeding is over if the charges were dismissed. And nothing stops the plaintiff there from bringing his Fourth Amendment claim for unreasonable seizure pursuant to legal process. And so what the DA will say, I'll tell you what, Your Honor. Go ahead. Hold it. We're going to have to triple our staff, or we're going to have to prosecute a lot of people who have very, very appealing personal conditions such that we feel we're going to be doing injustice if we go bring a case against them in a criminal court. And you say? Your Honor, the favorable termination rule was never intended and never served the function of filtering cases that have foundation or don't have foundation. So we think that the manner of dismissal can go to whether there was probable cause or not. The example you gave to me sounds like it would be pretty neutral as to whether probable cause existed or not, but it would not foreclose a civil suit. Just one more question, counsel. You do not embrace the Lasker test, right? We do. Well, but it seems to me that you're focused much more on finality than assessing whether that finality is consistent with innocence. So, Your Honor, the Lasker test was that there's no requirement of an indication of innocence, and what you were looking for was whether there was a judgment that is inconsistent with innocence. And this is important. It takes place at a categorical level, and Chief Judge Pryor says that. He several times says, you know, inconsistent with innocence, that is, it ended in a conviction or admission of guilt. And you say in your brief that the best thing that can happen for a defendant is to have the charges dismissed, right? Yes. Well, what if they're dismissed pursuant to an agreement that says, okay, you were the number two person in this vicious gang, and you've killed five people and all that, but we want you to testify against the number one person. And in exchange, we're going to dismiss the charges. Is that consistent with innocence? Well, Your Honor... A dismissal, and it's a pretty good thing for him, I guess, but I don't think anybody would look at that and say, you know, that's not inconsistent with your innocence. Under our test, the dismissal in that case would be a favorable termination, but as common law courts recognize, the manner of dismissal, and so that agreement would all but doom the Fourth Amendment claim. That person's never going to be able to prove that there was no probable cause, or presumably at least there's going to be a lot of evidence here, and if there's an agreement, you know, all but a stop for reasons completely separate and apart from the favorable termination rule, which was, as common law courts put it, a technical prerequisite protecting against parallel litigation, inconsistent judgments, and collateral attacks. So what we're looking for is what common law courts looked for. It's what the rule in Heck and... Common law courts really did. I sold this bread to feed my starving children, and the DA says, okay, okay, I understand. Unlike, et cetera, I won't prosecute you. You say, oh, good, wonderful. We now have a malicious prosecution claim. Right? So, Your Honor, common law courts carefully guarded the technical favorable termination prerequisite, and they understood that what Your Honor just described very much might doom. I'll direct you to Clark v. Cleveland, which is really kind of the canonical case by the New York Court of Appeals. It recognized that certain compromises or forms of mercy may be, I think the word it used, insurmountable, when it comes time to actually prove that there was an absence of probable cause, but they did not inflate it. No, I stole the bread. I mean, it's Jean Valjean. I stole it. And, yeah, to feed my starving children. I'm just saying, your view is, yep, there is a malicious prosecution claim. This is great. Well, I know four lawyers who will bring it, and there we are. And so next time, that DA doesn't give in to that argument. Well, remember, Your Honor, everyone here agrees that Petitioner's going to have to prove his claim. He still has to prove the absence of probable cause. He has to prove causation, and he has to overcome, had it not been asserted, the defense of qualified immunity. Thank you, Justice Thomas. Anything further? Justice Alito? As I understand what happened, your client was arrested without probable cause, and eventually, he was held for 39 hours and then released on his own recognizance. And sometime during that period, the criminal complaint was filed. Would he have been released any sooner had the criminal complaint not been filed? Your Honor, what we'll have to prove, and at least one of the seizure theories, we, of course, have the Second Circuit precedent that compelled attendance and the conditions are a seizure, but setting that aside for a moment, your Honor, what we would have to prove for that first seizure is that he would have been released had that false criminal complaint not been filed. In other words, had Respondent told the truth of what had happened to the prosecutor, he would have been released then because he had done nothing criminal. There would have been nothing to hold him for. The reason he was held was because, and solely because, and that's the causation piece, solely because of fabricated evidence that was produced by Respondent. You'd have to prove what went on in the DA's office. So the assistant DA who was handling this would say, well, you know, I expected this police officer to come tell me what actually happened before the initial appearance, and if I wasn't satisfied at that point, we would have released him. So, your Honor, on the causation point, these multiple actor cases, causation is really hard to prove. And that's why we don't see a lot of these claims unless there's really serious misconduct being alleged. And what you typically have to prove is either a deliberate or reckless disregard for the truth, and it's precisely because of what your Honor just said. If you don't have, when you have that, that's when you can say that it effectively, you know, prevents the prosecutor from making an independent judgment as to probable cause. And on top of that, you typically have to prove that it was the sole basis for initiating the proceeding, because if there's independent probable cause, well, then you can't satisfy the causation requirement. And your claim is that your client was continuously seized after that point, even though he was released on his own recognizance because he was required to come back to court. Is that it? So, your Honor, there was a seizure at the time that the legal process was initiated. I don't think the way the court has looked at it is that it's a continuing seizure. I think it's just that that claim doesn't accrue until favorable termination is how we would look at it. And under the Second Circuit precedent that Respondent never challenged below, there were additional seizures by virtue of the restrictions when he was released on recognizance and on the compelled attendance. Who affected these subsequent seizures? The judge? Under the Second Circuit case law, what's the theory? Is that your Honor's question? Under the correct understanding of the law, as you are explaining it to us, who affected the seizures that occurred after the initial appearance? So, your Honor, I think that the best authority this court has on that is Justice Ginsburg, concurrence, and Albright. We don't think the court should get into any of this. Remember, like, just last term, the court decided a question about what seizures meant, and it took 50 pages of historical analysis to get to that result with a divided opinion. This is an issue that Respondent just injected to the case in the first instance in its brief in opposition. We think what we need from this court is a resolution of the question that was decided by the Court of Appeals, whether there is an affirmative indications of innocence requirement under Section 1983 so that we can move on and litigate these questions about the merits. I have a... Am I to understand you correctly that what you're claiming is a Manuel-type fabrication of evidence to initiate the charges? Yes. And how are you not doomed by your adversary's fair trial claim where the jury found probable cause to arrest? Pardon my ignorance, but I thought that the jury there was charged that any probable cause to arrest on any charge was enough, and the jury voted for Respondent. Right. So why doesn't that doom you here? So, Your Honor, I just want to be precise because there are two claims. You first mentioned the fair trial claim, which is a due process claim. That claim doesn't turn on probable cause at all. There was no instructions related to probable cause with respect to the fair trial claim. That arises on a due process standard which turns on things like materiality at trial, which have nothing to do with a Manuel claim, right? So if the jury concluded that the fabricated evidence would not have likely affected a jury's verdict at the criminal trial, that would be a basis for rejecting the fair trial claim. It would not at all be a basis for concluding there was probable cause at the time that Petitioner was seized. So they're just two different constitutional claims addressing two different things. Where probable cause came in, Your Honor, was with respect to the false arrest verdict. And, you know, both the false arrest verdict and I'll note these are, again, all arguments that are being raised at kind of a last, a late-breaking stage here that we think the Second Circuit is perfectly capable of dealing with. But the false arrest and the unlawful entry claims that Respondent refers to, all of those were assessed from before the officers even entered Mr. Thompson's apartment. When you have officers responding to, on Respondent's own terms, what was kind of an ongoing child abuse claim, the fact that the jury might have found probable cause at time one with that information does not at all establish that there was probable cause, you know, many hours later when the false criminal complaint was filed and doesn't even necessarily relate to the same crime. All of these side claims that Justice Gorsuch and Justice Alito have asked you about, whether there is a Fourth Amendment claim, all of those issues, those have not been addressed by the Second Circuit. They were not raised below, correct? That's right. Respondent's theory has kind of shifted throughout this. It was Respondent and the Second Circuit who actually grounded all of these requirements in the Fourth Amendment below and we were arguing, no, they don't come from the Fourth Amendment. There's no favorable termination rule or malicious prosecution tort in the Fourth Amendment. So we were advocating Justice Gorsuch and Justice Alito's points below and we've stuck to the clear line of kind of this court's jurisprudence which finds that when a claim necessarily challenges, for good reason, right? We're talking about challenging an ongoing state judicial proceeding that you analogize to the tort of malicious prosecution and require a favorable termination. Justice Kagan? Mr. Raleigh, you said in your brief and then you repeated it here in your opening statement that if the common law courts were divided on the nature of the favorable termination rule, you win. And I'm just wondering why that's so. Why is it that if there's a draw as to the common law, we don't look to, we don't say, okay, the common law doesn't tell us much. We have to think about the Fourth Amendment and its purposes and our precedent respecting it. Why do you win if there's a draw on the common law? So, Your Honor, I think it depends precisely on what the draw is about. I made that in context of the question presented where what respondent, what the Second Circuit has put forward is that there's an additional inquiry, right? It's not just that it's got to be terminated and that it kind of terminates in favor of the accused in our sense, right? That there was no conviction. Everybody agrees that at a minimum those are required. But what they're saying is there's also this additional inquiry into innocence. So this is where the mini trials come into play. This is where, you know, we're digging into a criminal record to see whether there have been indications of innocence. Yeah, yeah, I get that. But like, if half the courts do that and half the courts don't, why do you win? Well, because what we're doing here is interpreting a federal statute. And if respondent wants to come forward and say, well, this federal statute has this additional requirement, I think you've got to have a statutory hook. And one of those statutory hooks, the only one we could think of, the one the Second Circuit thought was there but it mistakenly replied on the restatement, was that that was well settled at common law. And so, you know, Congress, another way to put it is Congress would have only taken for granted that initial, that additional inquiry if it were somehow pervasive at the time. And to read it into an otherwise silent statute, I think that's what respondents got to show. It doesn't really matter at the end of the day because as Chief Judge Pryor put it, we've got the well settled principle, the vast majority of courts at common law applied our rule and only Rhode Island applied respondents' rule. Justice Gorsuch? Decide what the elements of a malicious prosecution claim are under the Fourth Amendment if we're not sure such a thing exists. We are not asking the court to decide what the elements of a standalone Fourth Amendment are. We are asking us to decide what this element of favorable termination looks like in a malicious prosecution claim. And yet, as we discussed, counsel, we're not sure, you're not sure it should be under the Fourth Amendment. Maybe it should be under procedural due process. Maybe the Fourth Amendment claim should look very different than a malicious prosecution claim because we're interpreting a statute in the Fourth Amendment. What do we do about that fact? What do we do about the fact that you're asking us to define an element of a claim that may not exist? How many cases should this court continue down the road of assuming that which may not exist? So, I worry I haven't been clear, so let me try one more time to do this. Our claim exists. It is the claim that the court recognized in Manuel. Okay. Put that aside  the record, lots has shifted on both sides in this case. As I read the record, you raised a malicious prosecution claim below. Just work on that assume this assumption. Okay. And now, you're trying to slide it under Manuel. All right. Let's just stick with a malicious prosecution claim. If that's what's before us, assume that's before us. What should we do about the fact? And if you could just answer the question, what should we do about the fact that we're not sure it exists? Shouldn't we answer that particular question at some point? Your Honor, we think the court could start its opinion by saying respondent is alleging that we asserted a stand-alone malicious prosecution claim and no such claim exists under the Fourth Amendment. That is not the argument Petitioner is making here. Okay. So then you'd say, yes, there is no such claim but we still win anyway. Well, the question presented presumes the claim is unreasonable seizure pursuant to legal process, which is the claim of Manuel. And there was no confusion at the search stage when we used that. I got that. I got that. Is part of this about the accrual rule for statute of limitations purposes that a malicious prosecution claim doesn't accrue until dismissal? And that's advantageous? Well, Your Honor, I think it's, I think that there is, it does defer the claim. I mean, this favorable termination rule is a deferral of accrual. It's more just than that it's advantageous. It's avoiding the problems that were identified in McDonough about forcing a defendant to sue the people who have made the decision to prosecute him and then potentially waive his Fifth Amendment right of incrimination and give in to discovery. All of those same interests come into play in this claim. You could stay a case though too, right? Well, and that's exactly what the court rejected in McDonough, right? So the respondent in McDonough said just stay it like in Wallace. And what the court said very specifically was, well, in Wallace you were dealing with false arrests where there may never be charges. I do have a few more questions. I hate to occupy so much time, but I got that one. Why didn't your client bring a malicious prosecution claim under New York law in state court where the favorable termination requirement is just exactly as you describe it? Well, Your Honor, because Section 1983 permitted him to sue under the Fifth Amendment. I understand, but we all have choices in pleading. And I'm just curious, is there a reason why he didn't pursue it in state court with more advantageous legal rule? I actually don't know. I wasn't involved at the trial stage. I'm not sure why the decision wasn't made. Sometimes plaintiffs do a certain thing. That's fair enough. And then Manuel, why isn't this different than Manuel? Because here your client was seized by an arrest in the first instance, whereas in Manuel that question was reserved and the court decided where the seizure took place in the first instance by judicial process. There's a footnote reserving just this case. Yeah, that's right, Your Honor. I think in footnote three, Manuel says that it's not going to decide precisely when legal process started. And we don't think the court should decide it here because respondent never raised the issue until its briefing to this court. And, you know, as I noted, But would you agree he was seized by an arrest in the first instance? He was seized by an arrest in the first instance and then seized pursuant to the initiation of legal process when the false criminal complaint was what held him over. Well, a complaint can be filed whether or not someone is seized, right? You can file a complaint against a free person. Right. I guess, Your Honor, what I'm saying is that for us to succeed on our Manuel claim, we're going to have to show that it was a seizure pursuant to legal process. We accept that. We, of course, also have, like I said, the Second Circuit's precedent that was also unchallenged. And then the continuing seizure theory that we'd have to purchase if we're also buying the malicious prosecution tort of the Second Circuit. The theory is, as I understand it, that your client was seized even when he was released on his own recognizance and for the entire period until the completion of trial. Is that right? The Second Circuit precedent on that that respondent never challenged says that the travel restrictions that automatically apply upon release upon recognizance and also consistent with Justice Ginsburg's concurrence in Albright. Again, we don't think the Court should get into any of this. It's a hard question. But if we buy a malicious prosecution, if we endorse this tort, part of it, at least in the Second Circuit and some others, is that you're seized even when you're released on your own recognizance, right? Well, I don't mean to fight the premise, Your Honor, but I don't think the Court has to buy into any of that. The Court can simply accept, as respondents did throughout this entire proceeding, that there was a cognizable seizure here and the Second Circuit can decide whether a respondent waived that argument or has stated something Your position is going to be that he was continually seized through trial, right? Yes, we believe respondent forfeited with respect to those seizures, he forfeited any challenge. And just to finish up, on that theory, are people also seized even when they're given a citation but free to go, released on bail, received a civil process for a subpoena to appear at trial? Are those persons seized? Your Honor, I think the reason the bounds of that rule hasn't been litigated in this case, and I can't answer your question, is that respondent never raised it below. And so we're proceeding under the unchallenged Second Circuit precedent. We, of course, also have the seizure that undisputedly took place between the time that the criminal complaint was filed and that the hearing in this case took place. Justice Kavanaugh? Mr. Ali, the tort of unreasonable seizure pursuant to legal process, do you accept that that requires the plaintiff to prove the elements or some of the elements of malicious prosecution, including absence of probable cause? So the Fourth Amendment, to prove his Fourth Amendment violation, yes. We agree that petitioner would have to prove the absence of probable cause, but it comes from the Fourth Amendment, not from any tort of malicious prosecution. Okay. And then to follow up on answers you gave to the Chief Justice and Justice Breyer, just want to make sure I have this clear, your answer to the floodgates argument on the other side is that there really won't be a floodgates problem if we don't stick with the Second Circuit and the other circuits rule because of two things. One, the absence of probable cause requirement and two, qualified immunity. Is that accurate summary? And also, as I discussed with Justice Alito, the causation requirement, which actually does a lot of work in these multiple actor cases when you're suing a police officer. We also just, just to be very clear, we think the favorable termination rule is not a filtering rule and so we, you know, like Chief Justice, Chief Judge Breyer, find it hard to figure out how that even factors into this case. Thank you. Justice Barrett? Thank you, Counsel. Mr. Ellis? Mr. Chief Justice, and may it please the Court, at common law, the favorable termination element serves three purposes, namely, avoiding collateral attacks on criminal proceedings through civil suits, avoiding parallel proceedings over guilt and probable cause, and avoiding inconsistent criminal and civil judgments. Because Petitioner Section 1983 claim, like a malicious prosecution claim, though not exactly a malicious prosecution claim, challenges the validity of a criminal proceeding against him, incorporating a favorable termination element would well serve those purposes and in the government's view, the Court of Appeals was right to require Petitioner to show that the criminal proceeding against him terminated in his favor. The Court erred, however, in requiring that that termination itself indicate innocence. That additional requirement finds virtually no support in the common law of 1871. It does not serve the purposes of the favorable termination element and it would be inconsistent with the purposes and values of Section 1983 and the constitutional right that Petitioner asserts. The Court of Appeals decision should therefore be reversed. I welcome the Court's questions. What exactly is that constitutional right? We understand the constitutional right the same way Petitioner does. It's the one that was recognized by this Court, an unreasonable seizure pursuant in Manuel, an unreasonable seizure pursuant to legal process. Okay. What does that mean? What seizure and what process? So Petitioner discussed the two different seizures. We endorse the first but not the second, at least in theory. We think a detention on the basis of legal process can be a seizure, is a seizure, within the Fourth Amendment. We don't endorse the second theory, the broader one that he's advanced, that the ordinary burdens of facing trial are also a seizure under the Fourth Amendment. So what is the detention based on legal process here? So we think it's actually unclear from this record if that's in fact what happened. He has alleged in his complaint and it's reasserted here that the detention post the filing of the criminal complaint in this case was caused by that criminal complaint. He can make that out. We think that qualifies as a seizure pursuant to legal process. Under Manuel and one that would be analogous to a malicious prosecution claim. ...counsel, given that Donna said that if you bring someone to arraignment within 48 hours of arrest, you're presumptively okay. And here that happened. And also the plaintiff was in the hospital for a good portion of that, not actually in detention. And the complaint didn't, it was filed during that 48-hour period and he wasn't arrested pursuant to any legal process. He was arrested on a warrantless arrest. So how does that work? So those are great arguments that I think could be advanced to why on remand, if this claim is reserved or defense is reserved, why in fact he wasn't seized, he wasn't detained because of that criminal complaint. You may well be right, Your Honor. I think in this case that's not presented because the respondent hasn't forfeited that claim below. And we don't think that the court needs to answer that question to resolve the question presented just as it didn't do in McDonough. If you look in the footnote four of McDonough, it assumed in that case that there was sufficient deprivation of liberty to trigger the due process clause because it hadn't been challenged below and so it could reach and resolve the question presented on which there was a circuit split and it's the same situation you face here. Is there a value for us answering this question outside of this individual case? Absolutely, Your Honor. What other claims would having an answer to this be helpful? I'm sorry, you mean the question presented, Your Honor? Yes, other than in this case. Sure. So it's not clear on this record as I've said. I don't want this case. I want to know what other areas of law invoked malicious prosecution or what are the claims of those? We think the answer in this case would govern any claim under 1903 of an unreasonable seizure pursuant to legal process. We think you can assume that that was established here and then go on to resolve that question and it will govern in lots of cases like Manuel where there's no dispute anymore obviously that there was a seizure pursuant to reasonable legal process there. This is the question that the court left open at the end of Manuel. That's the question the court would be answering in this case and we think it does have salience and meaning outside the context of this particular case. What was the seizure pursuant to legal process here? I think there are two alleged seizures pursuant to legal process. The one is we would discuss the detention if it indeed was caused by the violence and criminal complaint and the second is the burdens of trial. We don't agree with that. We haven't endorsed that theory. We have serious doubts that the Fourth Amendment should be read to govern that you're seized if you're just required to show up at trial. Our point is only that the respondent didn't challenge that below. The court can assume it just as it assumed it in McDonough and reach and resolve the question presented in this case. Well, this is going to be a serious question although it's going to sound fanciful. Let's say someone is questioning a medical expert, an expert on lung cancer and the question is Doctor, I'm going to ask you a question about the centaur which is a creature that has the upper body of a human being and the lower body and the legs of a horse and what I want to know is if a centaur smokes five packs of cigarettes every day for 30 years does the centaur run the risk of getting lung cancer? What would the medical expert say to that? I think he'd say that's a fanciful question that I can't answer. I think that's not this case for a couple reasons, Your Honor. I think because Well, what should I do if I think there is no such thing as a Fourth Amendment malicious prosecution claim? Well, assume that it exists. Assume that there is the centaur and the centaur is out in the woods smoking cigarettes like crazy. So, I don't think Petitioner is asserting we don't need Petitioner to be asserting in this court a standalone right against malicious prosecution. We understand and it's baked into the question presented Petitioner to be asserting an unreasonable seizure pursuant to legal process just as the court recognized in Manuel. The malicious prosecution the relevance of the tort here is not in defining the constitutional violation but in looking to as the starting point for defining this claim for damages under Section 1983. I actually think that the court in Manuel laid out the process very well from pages 920 to 922. The first step is identifying the constitutional right at issue. Manuel did that. The second is to identify what are the contours of the 1983 claim for damages. And that turn looks to be the most analogous common law tort. Let me ask one more question and then I'll stop with this because it may be of no interest to anybody but me. But the part of the claim here that you think is legitimate is a claim that the   the Petitioner was seized pursuant to legal process for the period of time between the time that the Petitioner was seized pursuant to the filing of the criminal complaint and his release on his own recognizance. That's what's at issue. And you want us to say that for that claim that he should have been released after let's say 30 hours instead of 39 hours, there must be a favorable termination to the case  the Petitioner prosecution was unfounded and unwarranted. And that kind of claim brings into the case all of the concerns that the favorable termination element was intended to serve and to prevent. And we think that the Congress of 1871 when it enacted 1983 would have expected a claim that directly challenges the validity of an ongoing criminal proceeding would have had to show a favorable termination element to avoid collateral attack on that proceeding and to avoid inconsistent judgments. We think all of those reasons apply here just as they applied in Heck, just as they applied in McDonough and we think the court should incorporate that element into this claim. Mr. Ellis, one way to resolve this case is to assume a couple of questions that your brief suggests that we should ask. The standard practice when we have a 1983 suit raising that claim is to ask what the most analogous claim at the common law was. And as to that question, Manuel says we're not deciding, we're going to kick it back down, nobody's really addressed that. Now it turns out almost all the circuit courts have answered that question by saying, you know, the most analogous claim is the malicious prosecution, the old malicious prosecution claim, and that comes with a favorable termination rule. And then you have a split growing out of that which is like what is that favorable termination rule. So one way we could decide this is just to say we're still not deciding what the most analogous common law tort is, we're just sort of going to assume what basically every circuit court has held, which is that it's the malicious prosecution tort, which is the most analogous and that that comes with a favorable termination element. And now we'll tell you, given that everybody is doing the cases in this way, what  termination rule is. And we could decide it that way, but you seem to want us to say the most analogous tort is the malicious prosecution   most analogous and that comes with a favorable termination element in this particular context for this particular  claim without deciding it exists does a risk sort of answering how many packets of cigarettes. Fair enough. The second reason, Your Honor, is because it is a subject of a circuit split, as you note, and the parties have joined issue on this question. We briefed it in our case, it was briefed in the other case. We think the lower courts would benefit from that. I don't think this is briefed at all in this case. What's briefed in this case is the question of what the court is saying about this case. I think if you look to our brief, we briefly looked at the Chicago brief, they joined issue, and I think Respondent also joined issue on that. We think a claim like this where a petitioner is J33-34 directly challenging a seizure on the basis of an unfounded prosecution, that's the essence. We think the courts of appeals would benefit from that question. Common law in malicious prosecution did not require a seizure. That's right. The Fourth Amendment requires the seizure. That's the first step. The second step is when you're challenging a seizure on the basis of a criminal prosecution. Although the common law did not require a seizure, it did address it. Detention can be part of the damages. Malicious prosecution without a seizure is not cognizable under 1983? It's open technically under the procedural due process. We haven't taken a view. Why wouldn't that be the more natural home for a claim called malicious prosecution aimed at addressing the misuse of judicial process? If that were the right, I think  be reasonable to take this case to present. We're not asking this court to hold. We're following the court's analysis. You agree that if someone is arrested, they can bring a fourth amendment claim without being prosecuted. None of those elements are required. It's only when there's judicial process. All that answers this question. Once a seizure is pursuant to a legal process, that's analogous to a prosecution claim. Where else in the fourth amendment do we require proof of subjective malice?  goes along with favorable termination. We think favorable termination is an element of the claim for damage. If you look at this court's case, why shouldn't we get rid of favorable termination too? The answer is no. It wasn't a requirement of the constitutional claim. Justice Thomas, anything further? Justice Alito? Justice Kagan? Justice Kamala? I just have one question. So we look to analogous common law courts in deciding what's cognizable under the 1983 and you just told Justice Gorsuch essentially that you just want to pluck out favorable termination because it makes sense once processes started for all the reasons we have said in this line of cases. Where does that come from then? If we're saying that this is a constitutional claim, the petitioner's claim is precisely the gravamen of a prosecution claim. We think that would presumptively bring in the rules for a prosecution claim, but there's a second step. And that second step is asking whether a particular element or another  the constitutional claim would have anticipated that element to be a part of the damages claim. But the favorable termination element by contrast serves all the same purposes and presents no fundamental inconsistency. It serves other constitutional purposes. It's in for some reason. We don't think that the favorable termination       counsel. MR. BROWNLEE. Thank you, counsel. I think there's a reasonable concern for obvious reasons, Mr. Moore. MR. MOORE. Mr. Chief Justice, and may it please the Court. The Second Circuit correctly interpreted the favorable termination requirement of the petitioner's malicious prosecution claim. The Circuit's rule requires that a plaintiff bringing a charge to a criminal defendant in a way that reflected on the merits of those charges. That rule is supported and exists for good reason. The more foundational issue is that from the beginning the petitioner asserted a                        requirement to bring a charge to a criminal defendant    on the  those those   more foundational   from the beginning the Circuit's rule requires defendant on the those more foundational from the beginning the Circuit's rule requires that a plaintiff bringing a charge to a criminal defendant on the those more foundational  beginning the Circuit's rule on the those more  beginning those more foundational  the Circuit's rule requires a charge to  criminal defendant on the those more   the  rule requires that a defendant on the those  foundational beginning the Circuit's requires that a plaintiff bring a charge to a criminal defendant on the those more foundational   Circuit's  requires that  plaintiff bring a charge